**Opinion issued October 7, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00579-CV

———————————

**REBECCA DE LA ROSA AND CESAR DE LA ROSA, Appellants**

**V.**

**MIRACLE FARM, INC. AND ROBERT D. AVERY, Appellees**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Case No. 37976**

---

## MEMORANDUM OPINION

Rebecca and Cesar De La Rosa appeal the trial court's orders dismissing their claims alleging fraud and other misconduct in connection with the settlement of a wrongful-death and survival action under Texas Rules of Civil Procedure 166a

(summary judgment) and 91a (dismissal of baseless causes of action). We reverse in part, affirm in part, and remand for further proceedings.

## Background

The De La Rosas' teenage son was killed in an accidental shooting that occurred when Heston Avery—another teenager—pulled the trigger of what he mistakenly believed was an unloaded shotgun.

The De La Rosas filed a wrongful-death and survival action against Heston, Heston's parents, and Heston's grandfather Robert D. Avery in Shelby County ("the Shelby County lawsuit"). Relevant here, the De La Rosas alleged Robert was negligent for giving the shotgun to Heston when he knew or should have known that, because of youth, inexperience, or other factors, Heston likely would use the shotgun in a manner that risked harm to himself or others. During discovery in the Shelby County lawsuit, Robert gave deposition testimony and answered interrogatories on several topics, including his personal knowledge of whether Heston had behavioral, disciplinary, or substance-abuse issues.

The De La Rosas also served discovery on a third-party, Miracle Farm, Inc., a residential boys' ranch Heston attended before the shooting. Via subpoena, the De La Rosas sought information about Heston's time and experiences at Miracle Farm. Miracle Farm did not respond to the subpoena.

2

Meanwhile, Robert filed a combined traditional and no-evidence motion for summary judgment attacking the De La Rosas' claims against him on the merits, while his insurer offered to settle the claims. The De La Rosas never responded to the summary-judgment motion and instead accepted the settlement offer. The settlement agreement included a "full and complete" release with a waiver-of-reliance clause stating that, in executing the release, the De La Rosas were "not relying upon any statement or representation" of Robert and, instead, were "relying upon their own judgment[.]" Under the settlement terms, the trial court entered a partial take-nothing judgment for Robert in the Shelby County lawsuit.

Two weeks later, the De La Rosas moved for and obtained an order compelling discovery from Miracle Farm in the still-pending litigation against Heston.[1] According to the De La Rosas, the records they eventually received from Miracle Farm showed that, among other things, Heston was being treated for ADHD, "had gotten with the 'wrong crowd' at school," "had been receiving individual counseling," "needed ongoing social and psychological supervision," "act[ed] without thinking," "disregarded rules at home and at school," "ha[d] problems with adult authority figures," "had an alcohol and drug problem that caused family discord," and "was discharged or kicked out of Miracle Farm" about six months

---

[1]    The De La Rosas separately settled and dismissed their claims against Heston's parents.

3

before the shooting "because he arranged to have a drug dealer deliver drugs to him and other juveniles at Miracle Farm."

In the De La Rosas' view, the Miracle Farm records suggested that Robert gave false or incomplete deposition testimony and interrogatory answers when he claimed not to know of any psychological, behavioral, or substance-abuse issues that would make it reasonably foreseeable that Heston would act incompetently or recklessly with the shotgun. The De La Rosas' counsel wrote to Robert's counsel:

> It is now clear that the settlement and boilerplate release were procured by fraud and fraudulent inducement by [Robert] and that [Miracle Farm] committed fraud by nondisclosure and/or conspired with [Robert] in making false representations regarding [Heston] and withholding truthful information about him. None of the information revealed in the documents from [Miracle Farm] was discussed in settlement negotiations.

Additionally, counsel stated the De La Rosas' intention "to take all appropriate legal actions" against Robert, including rescinding the settlement agreement and release or filing a separate lawsuit for damages.

In response, Robert intervened in the Shelby County lawsuit and sought a declaratory judgment on the enforceability of the settlement agreement and release. He moved for a traditional summary judgment, arguing that the De La Rosas could not undo the settlement agreement because the release was binding and the waiver-of-reliance clause barred any fraud claims. The Shelby County trial court

4

granted Robert's motion and severed the dispute between the De La Rosas and Robert from the remaining claims against Heston.

The De La Rosas appealed the summary judgment in favor of Robert, and the Tyler Court of Appeals affirmed.[2] *See De La Rosa v. Avery*, No. 12-23-00112-CV, 2023 WL 7178022, at *4–7 (Tex. App.—Tyler Oct. 31, 2023, no pet.) (mem. op.). In affirming, the Tyler Court rejected the De La Rosas' arguments that the release and its waiver-of-reliance provision were not binding because fact issues existed as to whether the terms were negotiated and whether the parties discussed Robert's alleged misrepresentations during the settlement negotiations. *Id.* at *7. The court ultimately concluded Robert was "entitled to judgment as a matter of law based on a valid written release of liability." *Id.*

## A.     The fraud lawsuit in Washington County

After Robert intervened in the Shelby County lawsuit but before the Shelby County trial court granted him summary judgment, the De La Rosas filed a new lawsuit against Robert and Miracle Farm in Washington County (the "Washington

---

[2]     Heston's parents, whom the De La Rosas' counsel copied on the letter alleging fraudulent inducement regarding the Miracle Farm records, took the same actions as Robert in that they intervened back into the Shelby County lawsuit, obtained a summary judgment on the enforceability of their separate settlement agreement with the De La Rosas, and then defended the ruling on appeal. *See De La Rosa v. Avery*, No. 12-24-00111-CV, 2024 WL 4002386, at *3–7 (Tex. App.—Tyler Aug. 29, 2024, no pet.) (mem. op.) (after remand, concluding trial court did not err in granting summary judgment on enforceability of waiver-of-reliance clause in settlement agreement).

5

County lawsuit"). In their original and amended pleadings, the De La Rosas pleaded causes of action for fraud, negligence, gross negligence, and assisting and participating in fraud against Robert based on allegations that he gave false and misleading deposition testimony and interrogatory answers about Heston's immaturity, drug and alcohol use, and disciplinary issues and then failed to "supplement his discovery to provide truthful and complete discovery responses." They further alleged that because they had no knowledge of the information contained in Miracle Farms' records and could not have discovered that information from another source, they relied on Robert's misrepresentations in deciding to settle the Shelby County lawsuit "for a small fraction of the actual damages."

Against Miracle Farm, the De La Rosas pleaded causes of action for negligence, gross negligence, and fraud by nondisclosure based on Miracle Farm's "disregard of the subpoena" and "refusal to provide its records on Heston" until after they settled their claims against Robert and obtained a court order compelling the production. The gist of their allegations was that Miracle Farm had a "moral, social, fiduciary, and legal duty . . . to produce the records in a timely manner" and, in failing to do so, deprived the De La Rosas of information that would have reflected negatively on Heston and increased the value of their claims in the Shelby County lawsuit. Additionally, the De La Rosas alleged that Miracle Farm had an incentive to withhold Heston's records because Robert served on the board of trustees "for the

6

religious organization that controls Miracle Farm," and thus was liable for assisting and participating in Robert's fraud.

Miracle Farm moved to dismiss under Rule 91a. Without specifying its reasons, the trial court granted the Rule 91a motion and dismissed all the claims against Miracle Farm.

On the same day, the trial court granted summary judgment for Robert, disposing of all the De La Rosas' claims against him. Robert had argued that he was entitled to judgment as a matter of law because the Shelby County trial court's summary judgment order precluded the De La Rosas' new claims in the Washington County lawsuit and the release executed by the De La Rosas was binding and estopped them from continuing to sue him. In its order granting Robert's motion, the trial court stated Robert was entitled to summary judgment because: (1) the Shelby County trial court's order "constitutes res judicata" in the Washington County lawsuit, and (2) the De La Rosas' settlement agreement with Robert "is valid, enforceable, and forever bars them from bringing any claims or causes of action against Robert . . . which in any way pertain to [the Washington County lawsuit] or the [accidental shooting] incident."

The De La Rosas now appeal.

7

**Robert's Motion for Summary Judgment**

The De La Rosas contend the trial court erred by granting summary judgment on their fraud claim against Robert because the claim was not barred by res judicata or the waiver-of-reliance provision in the settlement agreement.[3] We address only res judicata because it is dispositive. *See* TEX. R. APP. P. 47.1.

**A.     Standard of review**

We review a trial court's summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). A defendant who conclusively negates at least one essential element of the plaintiffs' cause of action is entitled to summary judgment as to that cause of action. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Likewise, a defendant who conclusively establishes all the elements of an affirmative defense is entitled to summary judgment. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000).

---

[3] The De La Rosas do not complain about the dismissal of their negligence, gross negligence, or assisting and participating claims against Robert.

## B.      Res judicata

Res judicata—also known as claim preclusion—bars lawsuits that arise out of the same subject matter as a prior suit when, "with the use of diligence, that subject matter could have been litigated in the prior suit." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) ("Generally, res judicata prevents a plaintiff from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit."). The doctrine "seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Daccach*, 217 S.W.3d at 449; *see Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) ("For any rational and workable judicial system, at some point litigation must come to an end, so that parties can go on with their lives and the system can move on to other disputes.").

"'[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose.'" *Eagle Oil & Gas*, 619 S.W.3d at 705 (quoting *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)). We examine the factual bases, not the legal theories, presented in the cases. *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Barr*, 837 S.W.2d at 631).

When deciding whether a set of facts forms a transaction, we make this determination pragmatically, giving weight to considerations such as whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial. *See Barr*, 837 S.W.2d at 631; *Samuel*, 434 S.W.3d at 234.

The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). The party asserting the defense of res judicata bears the burden to prove each element of the defense. *Eagle Oil & Gas*, 619 S.W.3d at 706.

### 1.     Prior final judgment

The De La Rosas contend the Shelby County trial court's summary judgment is not a prior final judgment on the merits because the order did not state the court's reasons for ruling in Robert's favor and the order was on appeal to the Tyler Court of Appeals. We disagree.

A final summary judgment is a judgment on the merits that is given preclusive effect for the purpose of res judicata. *Fernandez v. Mem'l Healthcare Sys., Inc.*, 896 S.W.2d 227, 231 (Tex. App.—Houston [1st Dist.] 1995, writ denied). There is no real dispute that the Shelby County trial court's summary judgment in Robert's favor

became final upon its severance from the claims still pending against Heston. Even though the trial court's reasons for granting summary judgment are not specified in the order itself, they are found in Robert's motion, which requested a declaration that the settlement agreement and release between him and the De La Rosas was binding and concluded the litigation between them. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 340–41 (Tex. 1993) (summary-judgment motion "must stand or fall on the grounds expressly presented in the motion"). Because the uncontroverted evidence shows that the Shelby County trial court considered Robert's motion and granted summary judgment because it found the motion meritorious, the summary judgment is an adjudication on the merits.[4] *See Fernandez*, 896 S.W.2d at 231.

---

[4] In this appeal, the De La Rosas argue that the Shelby County trial court's summary judgment cannot have preclusive effect because the order incorrectly referenced Robert's pre-settlement summary-judgment motion attacking the merits of the De La Rosas' negligence claims against him, rather than his post-settlement summary-judgment motion on res judicata and the release's waiver-of-reliance provision. This position is inconsistent with the one they took in the Tyler Court, when they recognized the Shelby County trial court's order as arising from Robert's petition in intervention and subsequent motion on the enforceability of the settlement agreement. *See De La Rosa*, 2023 WL 7178022, at *4 (arguing "they are not bound by the settlement agreement and release [with Robert], despite its waiver-of-reliance provision"). Moreover, the incorrect reference to the pre-settlement motion was corrected by the Shelby County trial court in a nunc pro tunc order, and the De La Rosas did not challenge the propriety of the nunc pro tunc order in the Tyler appeal. *See generally id.*; *see also Pharus Funding, LLC v. Sanchez*, No. 14-20-00418-CV, 2022 WL 288122, at *1 n.1 (Tex. App.—Houston [14th Dist.] Feb. 1, 2022, pet. denied) (mem. op.) (nunc pro tunc order elates back to the date of the original order and is effective as of the earlier date).

11

The fact that the De La Rosas had appealed the Shelby County trial court's summary judgment to the Tyler Court of Appeals does not prevent that judgment from having preclusive effect. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) ("[A] judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." (quotations omitted)); *Foussadier v. Triple B Servs., LLP*, No. 01-21-00024-CV, 2022 WL 3589497, at *4 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.) (even though summary judgment was appealed, "it was final for the purpose of res judicata as of the date of its issuance"). And it retained its preclusive effect when it was affirmed by the Tyler Court. *See De La Rosa*, 2023 WL 7178022, at *9. Thus, the first element of res judicata—requiring a prior final determination on the merits by a court of competent jurisdiction—is satisfied. *See Amstadt*, 919 S.W.2d at 652.

### 2. Identity of parties

The De La Rosas also assert that Robert did not meet the second res-judicata element because there was not a complete identity of parties between the Shelby County and Washington County lawsuits. They point out that Miracle Farm was not a party to the Shelby County lawsuit but was a party to the Washington County lawsuit, whereas Heston's parents were parties to the Shelby County lawsuit but not the Washington County lawsuit. It does not matter whether Miracle Farm or

Heston's parents were parties in both actions because res judicata was asserted as an affirmative defense by Robert, who was a party in both actions, against the De La Rosas, who also were parties in both actions. Thus, the second element of res judicata—requiring an identity of parties—is met. *See id.*

### 3. Same claims

The De La Rosas argue that Robert failed to meet the third res-judicata element because their fraud claim related to the settlement agreement was not ripe when they initially sued him in Shelby County for negligence in causing or contributing to cause their son's death. That is, the De La Rosas assert their fraud claim against Robert arises from new facts that were not discovered before a partial take-nothing judgment was entered for Robert in the Shelby County lawsuit per the terms of the settlement.

Certainly, the Supreme Court of Texas has held that res judicata cannot bar a claim that was not ripe at the time the first lawsuit was filed. *Eagle Oil & Gas*, 619 S.W.3d at 706. And certainly, when the De La Rosas filed the Shelby County lawsuit, the claims related to the settlement agreement and release were not ripe because the settlement agreement had not yet been created or signed. But the Supreme Court has also held that when a dispute over a settlement agreement arises while the trial court still has jurisdiction over the underlying action, "a claim to enforce the settlement agreement should, if possible, be asserted in that court under

the original cause number." *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996). Robert did that.

In the Shelby County lawsuit, although a partial take-nothing judgment had been entered in his favor on the De La Rosas' wrongful-death and survival claims, Robert intervened in the still-pending case against Heston and sought a declaration that the settlement agreement and release between him and the De La Rosas is valid, enforceable, and binding on the parties. The letter from the De La Rosas' counsel that preceded (and prompted) Robert's intervention essentially laid out the claim the De La Rosas later asserted against Robert in the Washington County lawsuit. The letter—sent about six months before the Shelby County trial court granted Robert summary judgment—alleged that the Miracle Farm discovery showed Robert gave false and incomplete deposition testimony and untruthful interrogatory answers which the De La Rosas reasonably relied on in deciding to settle the case against him, that none of the information revealed in the Miracle Farm documents was part of the settlement negotiations, and that they believed the "boilerplate" settlement and release were procured by Robert's fraud and fraudulent inducement. Counsel further related that the De La Rosas asked him to take "all appropriate legal actions against [Robert] . . . including rescission of the settlement agreement and release and a separate lawsuit to recover actual and punitive damages."

In responding to Robert's subsequent intervention and summary-judgment motion on the enforceability of the settlement agreement and release in the Shelby County lawsuit, the De La Rosas could have asserted a counterclaim for fraudulent inducement. *Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 206 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (applying res judicata to compulsory counterclaim); *see also* TEX. R. CIV. P. 97(a) (counterclaim must be litigated in an initial suit when "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction"). That is, the issue of the settlement agreement and release's validity and enforceability would have formed a convenient trial unit with the allegation that the settlement agreement and release are not enforceable because of fraudulent inducement. *See Barr*, 837 S.W.2d at 630 (observing substantial similarity of definition of res judicata and rule of compulsory counterclaims). With due diligence, the De La Rosas' fraudulent inducement allegations could have been joined in the Shelby County lawsuit. Thus, the third element of res judicata—requiring a second action based on the same claims that were raised or could have been raised in the first action—is satisfied. *See Amstadt*, 919 S.W.2d at 652.

In sum, because the De La Rosas were parties to the Shelby County Lawsuit, wherein Robert sought relief declaring the settlement agreement valid and

enforceable, and the claims alleged both then and in the Washington County lawsuit arise from the same nucleus of operative facts, we hold that res judicata bars the De La Rosas' fraud claim against Robert. And therefore, the trial court did not err in granting summary judgment for Robert.

We overrule the De La Rosas' issue challenging the summary judgment on their claims against Robert.

### Miracle Farm's Rule 91a Motion to Dismiss

The De La Rosas argue the order dismissing their claims against Miracle Farm under Rule 91a is erroneous because (1) Miracle Farm's Rule 91a motion was not timely as to their fraud by nondisclosure claim, (2) the economic-loss rule does not bar recovery of their negligence claim, and (3) there is a factual basis for their assisting-and-participating-in-fraud claim.[5]

### A. Standard of review and applicable law

A party may move to dismiss a claim under Texas Rule of Civil Procedure 91a because the claim has no basis in law or fact. TEX. R. CIV. P. 91a.1; *see City of Dall. v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016). A claim "has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. A claim

---

[5] The De La Rosas do not complain about the dismissal of their gross negligence claim under Rule 91a.

has no basis in law in at least two situations: when the nonmovant's pleading alleges (1) too few facts to establish a cognizable claim or (2) facts that defeat the claim. *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). A claim "has no basis in fact if no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1.

In deciding the motion, the trial court must liberally construe the pleadings in the nonmovant's favor. *See Stallworth v. Ayers*, 510 S.W.3d 187, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.). It cannot consider evidence. TEX. R. CIV. P. 91a.6. Instead, it "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59," which includes a written instrument on which the claims or defenses are based. TEX. R. CIV. P. 59, 91a.6. These limitations, of course, do not bar the trial court from considering the legal arguments made by the parties. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655–56 (Tex. 2020).

We review a trial court's order dismissing claims under Rule 91a de novo. *Id.* at 654. We do so because whether a remedy is available based on the facts alleged by a plaintiff is a question of law and Rule 91a's factual-plausibility standard is analogous to a legal-sufficiency review. *Sanchez*, 494 S.W.3d at 724.

17

## B.    Fraud by nondisclosure

The De La Rosas argue the trial court erred in dismissing their fraud by nondisclosure claim because Miracle Farm's motion was untimely as to that claim.

Under Rule 91a.3, a motion to dismiss "must" be "filed within 60 days after the first pleading containing the challenged cause of action is served on the movant[.]" TEX. R. CIV. P. 91a.3(a).  Generally, the term "must" is recognized as mandatory, creating a duty or obligation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).  And in the context of a timing provision, like the sixty-day deadline in Rule 91a.3, "must" is "given a mandatory meaning when followed by a noncompliance penalty." *Id.*  But if a provision requiring an act to be performed within a certain time does not contain words restraining the act's performance after that time, the timing provision is usually directory. *Id.* at 495.

Because Rule 91a does not provide any consequences for filing a motion outside of the prescribed sixty-day period, this Court and others have held that the timing provisions in Rule 91a.3 are directory and not mandatory. *Malik v. GEICO Advantage Ins. Co.*, No. 01-19-00489-CV, 2021 WL 1414275, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.); *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *7 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.).  Consequently, any noncompliance with the timing of the motion will not result in reversal if the error is harmless. *Malik*, 2021

18

WL 1414275, at \*4 (citing TEX. R. APP. P. 44.1(a)); *see also MedFin Mgr., LLC v. Stone*, 613 S.W.3d 624, 628–29 (Tex. App.—San Antonio 2020, no pet.) (trial court's failure to deny Rule 91a motion within prescribed time was error subject to harm analysis); *Malone v. Malone*, No. 06-10-00083-CV, 2011 WL 908176, at \*5 (Tex. App.—Texarkana Jan. 7, 2011, no pet.) (mem. op.) ("The harmless error rule applies to all errors, even those involving the violation of procedural rules couched in mandatory language.").

The De La Rosas argue Miracle Farm's motion was untimely as to their fraud-by-nondisclosure claim because the motion was filed more than sixty days after they first asserted the claim in their original petition. Assuming the De La Rosas are correct about the motion's untimeliness, they are not entitled to relief because they have not shown harm from the complained-of delay. *See* TEX. R. APP. P. 44.1(a); *Malik*, 2021 WL 1414275, at \*4.

As Miracle Farm points out, the De La Rosas amended their pleadings four times in the first five months of the Washington County lawsuit. They filed their original petition alleging fraud by nondisclosure against Miracle Farm on November 22, 2022, and then amended the petition less than two weeks later. They voluntarily abandoned the fraud-by-nondisclosure claim in their second amended petition filed on February 20, 2023, and alleged claims for negligence and gross negligence instead. The De La Rosas then revived the fraud-by-nondisclosure claim in a third

19

amended petition filed on March 3, 2023. And they carried the fraud-by-nondisclosure claim forward in their fourth amended petition on April 27, 2023. Miracle Farm filed its initial Rule 91a motion forty-two days after the De La Rosas revived the fraud-by-nondisclosure claim in the third amended petition.

The De La Rosas have not explained how this timing harmed them, considering they effectively dismissed the fraud-by-nondisclosure claim when they omitted it from their second amended petition just three months after the Washington County lawsuit began. When the claim was revived in the third amended petition, Miracle Farm moved with the speed contemplated by Rule 91a and challenged the claim as ripe for early dismissal within forty-two days. As our sibling court in Fort Worth recognized,

> Rule 91a, including its directory deadlines, was intended to benefit a movant seeking early dismissal of a baseless claim before costly litigation ensues. Additional time would not prejudice a nonmovant because the delay would given the nonmovant more time to formulate a response to a dismissal argument, more time to amend a petition to add facts or adjust legal theories, and more time to consider whether to non-suit [its] case.

*Fiamma Statler*, 2020 WL 6334470, at *8 (internal quotation and citations omitted) (rejecting argument that delay in filing and ruling on Rule 91a motion probably caused rendition of improper judgment or probably prevented appellant

from properly presenting its case to appellate court).[6] On this record, we cannot conclude that the complained-of delay in the filing of Miracle Farm's Rule 91a motion caused the rendition of an improper judgment or prevented the De La Rosas from properly presenting their case to this Court. *See* TEX. R. APP. P. 44.1(a).

We overrule the De La Rosas' issue challenging the dismissal of their fraud-by-nondisclosure claim against Miracle Farm.

## C.    Negligence

The De La Rosas argue the trial court erred by dismissing their negligence claim against Miracle Farm because it is not barred by the economic-loss rule. While the economic-loss rule was one ground on which Miracle Farm challenged the negligence claim, it was not the only ground. The motion's other ground—that the negligence claim has no basis in law because a non-party does not owe a duty to protect a plaintiff from prematurely settling their case before discovery responses are served—is unchallenged by the De La Rosas on appeal. *See D. Hous., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (duty is essential element of every negligence cause of action).

When, as here, an order granting a Rule 91a motion does not specify the grounds for dismissal, the party appealing the order must challenge every ground

---

[6]     Notably, the De La Rosas do not make any argument that the Rule 91a motion should not have been granted as to the fraud-by-nondisclosure claim on the merits, further supporting our harmlessness determination.

upon which the trial court could have granted the motion. *See Est. of Savana*, 529 S.W.3d 587, 592 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Shumway v. Whispering Hills of Comal Cnty. Tex. Prop. Owners Ass'n, Inc.*, No. 03-15-00513-CV, 2016 WL 4429939, at *2 (Tex. App.—Austin Aug. 16, 2016, pet. denied) (mem. op.); *Parkhurst v. Office of Att'y Gen. of Tex.*, 481 S.W.3d 400, 402 (Tex. App.—Amarillo 2015, no pet.). If the appealing party fails to address any ground, we must uphold the order on the unchallenged ground. *Parkhurst*, 481 S.W.3d at 402. Because the De La Rosas did not address the duty ground on appeal, we must uphold the dismissal of the negligence claim. *See id.*

We overrule the De La Rosas' issue challenging the dismissal of their negligence claim against Miracle Farm.

## D. Assisting and participating in Robert's fraud

The De La Rosas next argue the trial court erred by dismissing their claim that Miracle Farm assisted and participated in Robert's fraud.

Viewing the allegations for the assisting-and-participating claim liberally in the De La Rosas' favor, they allege that Robert committed fraud when he gave false interrogatory responses in March 2021 and false deposition testimony in December 2021 in the Shelby County lawsuit, that they subpoenaed Miracle Farm for documents regarding Heston in January 2022, that there was an incentive for Miracle Farms to withhold the documents because Robert had been on the board of trustees

22

for the organization that controls Miracle Farm for twenty-six years, and that Miracle Farm assisted and participated in Robert's fraud by negligently, recklessly, or intentionally withholding production of the documents regarding Heston.

In the Rule 91a motion, Miracle Farm's sole challenge to the assisting-and-participating claim is that the claim has no basis in fact because no reasonable person could believe Miracle Farm assisted and participated in Robert's fraud by refusing to respond to the subpoena that was sent after Robert allegedly provided fraudulent discovery answers. *See* TEX. R. CIV. P. 91a.1 ("A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."). Miracle Farm did not argue that the assisting-and-participating claim has no basis in law because the allegations, taken as true, do not entitle the De La Rosas to the relief sought. *See Guillory*, 470 S.W.3d at 240 (recognizing situations in which claim has no basis in law under Rule 91a).

Assuming without deciding that an assisting-and-participating claim is recognized under Texas law, and that the allegations provide a basis in law for the claim if believable, we disagree that dismissal was warranted based on Miracle Farm's "no basis in fact" challenge. The De La Rosas are not asserting that Miracle Farm literally assisted and participated Robert at the specific times he provided the allegedly fraudulent interrogatory responses and deposition answers, but are asserting Miracle Farm assisted and participated in Robert's fraud by withholding

23

documents that would have revealed the fraud to the De La Rosas. Without regard to whether these facts provide a basis in law for the claim, they are not unbelievable. Because these allegations are not such that no reasonable person could believe them, we hold Miracle Farm was not entitled to dismissal under Rule 91a. *See Nat'l Cleaners, LLC v. Aron*, No. 14-21-00549-CV, 2022 WL 3973591, at *7 (Tex. App.—Houston [14th Dist.] Sept. 1, 2022, no pet.) (mem. op.) (concluding claim had basis in fact because allegations were not unbelievable). We sustain the De La Rosas' issue challenging the dismissal of their assisting-and-participating claim against Miracle Farm.

## Conclusion

We reverse that portion of the trial court's Rule 91a motion order dismissing the De La Rosas' assisting-and-participating claim against Miracle Farm, affirm the remainder of the trial court's judgment, and remand for further proceedings consistent with this opinion.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

24